IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03125-M

| | | |
|---|---|---|
| CHRISTOPHER SHAWN FRIONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SERGEANT BEST, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on plaintiff's motion for injunctive relief, Mot. [D.E. 60], and defendants' motion for summary judgment, Mot. [D.E. 48]. For the reasons discussed below, the court denies plaintiff's motion and grants defendants' motion.

Relevant Procedural History:

On May 7, 2021, Christopher Frione ("plaintiff" or "Frione"), a state inmate proceeding *pro se* and without prepayment of fees, filed an unverified complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 9]. Plaintiff generally alleges Sergeant Best ("Best"), Correctional Officer ("C.O.") Howell ("Howell"), C.O. Carmon ("Carmon"), C.O. Edwards ("Edwards"), and C.O. Jackson ("Jackson"), (collectively, "defendants") violated his First and Eighth Amendment rights at Maury C.I. and Lenoir Memorial Hospital on May 1 and 2, 2020. See Compl. [D.E. 1] at 6–13.

On July 1, 2021, the court denied plaintiff's motions to appoint counsel and compel discovery, dismissed First Amendment claims, but allowed Eighth Amendment claims to proceed against Best, Howell, Carmon, and Edwards for excessive force, against Jackson and Edwards for deliberate indifference, and against Jackson for failure to intervene. See Order [D.E. 13].

Plaintiff accepted the assistance of North Carolina Prisoner Legal Services, Inc. ("NCPLS") with conducting discovery. See [D.E. 14, 18].

On September 13, 2021, plaintiff moved for entry of default. Mot. [D.E. 21].

On October 26, 2021, plaintiff moved for a preliminary injunction or a temporary restraining order ("TRO"). Mot. [D.E. 23].

On November 30, 2021, defendants timely answered the complaint. Answer [D.E. 27].

On December 2, 2021, the court denied plaintiff's motion for entry of default and denied without prejudice and with leave to refile his motion seeking injunctive relief. Order [D.E. 30].

On April 29, 2022, plaintiff filed a notice that NCPLS had assisted with discovery but would not provide plaintiff further representation in this action. [D.E. 38].

On October 6, 2022, defendants moved for summary judgment, Mot. [D.E. 48], and filed a memorandum [D.E. 49], an appendix [D.E. 50], and a statement of material facts [D.E. 52].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 51].

On November 3, 2022, plaintiff filed a brief in response to defendants' motion for summary judgment [D.E. 55], together with an appendix [D.E. 55-1], and exhibits [D.E. 55-2, 55-3, 55-4]. Plaintiff subsequently filed a letter in support of his response in opposition. [D.E. 64].

On November 7, 2022, plaintiff moved for discovery-related sanctions. Mot. [D.E. 56].

On January 3, 2023, the court denied the motion for sanctions. Order [D.E. 58].

On July 27, 2023, plaintiff moved for injunctive relief. Mot. [D.E. 60]. Plaintiff later filed a memorandum in support. [D.E. 62]. Defendants oppose the motion. [D.E. 63].

2

Statement of Facts:

At Maury C.I. on May 1, 2020, at approximately 6:40 p.m., plaintiff requested Tylenol or Non-Aspirin because he had a "severe migraine headache," but C.O. Jackson purportedly "stated that it wasn't important & never brought [plaintiff] anything." Compl. [D.E. 1] at 9. Plaintiff had complained about headaches prior to that date.[1] Defs.' Stmt. Mat. Facts. [D.E. 52] at ¶6. Because he was upset that staff would not declare a medical emergency for his headaches, plaintiff cut himself along his right forearm circa 7:00 p.m. Id. at ¶7; Compl. [D.E. 1] at 9 (alleging he was having suicidal thoughts). Best, Carmon, and Howell responded to plaintiff's cell for a call regarding these self-inflicted injuries.[2] Defs.' Stmt. Mat. Facts. [D.E. 52] at ¶8. Plaintiff was directed to "cuff up" but he "couldn't" because he "was lightheaded & laying on the floor." Compl. [D.E. 1] at 9. Officers entered the cell, rolled plaintiff over, handcuffed him, extracted him from the cell, and escorted him to the Red Unit treatment room.[3] Id. at 9–10.

---

[1] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); see Fed. R. Civ. P. 56(e)(2). Plaintiff's "statement of facts" does not include correspondingly numbered paragraphs controverting defendants' statement of material facts. See Pl.'s Br. [D.E. 55] at 5–13. As noted above, plaintiff's complaint is unverified. Additionally, plaintiff has not offered affidavits, declarations, or other competent summary judgment evidence despite receiving adequate notice pursuant to Roseboro and having an opportunity to do so. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021); cf. Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021).

[2] Plaintiff alleges: "When [C.O.] Jackson made his next rounds he found me in my cell on the floor in a pool of blood. I had lost a substantial amount of blood & I was slightly disoriented." Compl. [D.E. 1] at 9. Jackson declares: "I was not one of the officers that responded to the cell of plaintiff." Defs.' App., Ex. 5, Jackson Decl. [D.E. 50-5] at ¶3; see also id., Ex. 3, Best Decl. [D.E. 50-3] at ¶3 (declaring, when Best arrived at the cell, Carmon, Howell and non-defendant Officer Joyner were present).

[3] Plaintiff alleges: "After handcuffs were placed on me & I was still on the floor, Howell kicked me in the side of my face & stated 'that's for cutting yourself.'" Compl. [D.E. 1] at 10. Howell declares: "While in Frione's cell, I did not kick Frione in the face." Defs.' App., Ex. 4, Howell Decl. [D.E. 50-4] at ¶4; id., Ex. 3, Best Decl. [D.E. 50-3] at ¶4 (declaring: the "cell door was closed and locked when I arrived on the scene"; "I believe I saw all the interactions between Frione and correctional staff"; and "While in his cell, Officer Howell did not kick Frione in the face").

3

In the Red Unit treatment room, plaintiff use racial slurs, officers placed him on the ground and applied full restraints, and a nurse attempted to examine his self-inflicted laceration.[4] Compl. [D.E. 1] at 10; Defs.' Stmt. Mat. Facts. [D.E. 52] at ¶¶10–12. Plaintiff then was escorted to main medical.[5] Defs.' Stmt. Mat. Facts. [D.E. 52] at ¶13.

"While in main medical, plaintiff was irritable, agitated, angry, and rageful." Id. at ¶15. Main medical personnel noted the self-inflicted cut on plaintiff's arm, and another small cut above his eye, and determined that plaintiff needed to go to the hospital. Id. at ¶¶14, 16.

Edwards and non-defendant Officer Britt escorted plaintiff to Lenoir Memorial Hospital, plaintiff received sutures in his right arm but, due to his aggressive behavior the doctor did not treat the small cut above his eye.[6] Id. at ¶¶17–18; Compl. [D.E. 1] at 11.

---

[4] Plaintiff alleges: "Best comes while I was standing up & my hands cuffed behind my back & my legs restrained, he starts yelling at me for calling [C.O.] Howell a 'f----ing n-----' for kicking me"; "Best swings his fist at me to hit up but I lean to the side to avoid being hit"; "Best tries to hit me again & [C.O.] Howell steals (hits) me from the side & then [C.O.] Carmon jumps in & they all (Best, Howell, & Carmon) started hitting & beating me"; and "Jackson just stands & watches while I'm being assaulted & beaten by his fellow officers & sergeant" Compl. [D.E. 1] at 10. By contrast, Best, Howell, and Carmon declare that: while in the Red Unit treatment room, plaintiff became aggressive, hurled racial slurs at the officers, threatened to have "his homies" kill the officers, refused multiple orders to stay seated for medical screening, and lunged at Best; Best ordered Joyner and Carmon to place plaintiff on a flat surface; Joyner and Carmon each took one arm and "guided [plaintiff] to the floor"; once on the floor and in full restraints, plaintiff stopped resisting the officers; and, "by that time, the nurse had determined [plaintiff] needed to go to main medical." See Defs.' App., Ex. 2, Carmon Decl. [D.E. 50-2] at ¶3; id., Ex. 3, Best Decl. [D.E. 50-3] at ¶3; id., Ex. 4, Howell Decl. [D.E. 50-4] at ¶3. Best, Howell, and Carmon also declare that neither they nor any other staff members hit, kicked, or beat plaintiff. See id., Ex. 2, Carmon Decl. [D.E. 50-2] at ¶5; id., Ex. 3, Best Decl. [D.E. 50-3] at ¶5; id., Ex. 4, Howell Decl. [D.E. 50-4] at ¶5. Plaintiff acknowledges he "stood up from the chair when the SGT came over to [him]." See Pl.'s Br. [D.E. 55] at 10.

[5] Plaintiff alleges: "The officers then forcefully took me out of the treatment room & down the main hallway when [C.O.] Carmon throws me to the floor because I couldn't walk fast enough with the leg chains on & my hands cuffed from behind my back." Compl. [D.E. 1] at 10. Carmon declares that, while escorting plaintiff from the Red Unit treatment room to main medical, he did not throw plaintiff to the ground but instead escorted plaintiff in a wheelchair. Id., Ex. 2, Carmon Decl. [D.E. 50-2] at ¶6. Best likewise declares that Carmon and Joyner escorted plaintiff to main medical in a wheelchair. See Defs.' App., Ex. 3, Best Decl. [D.E. 50-3] at ¶3.

[6] Plaintiff alleges: "After I was treated for my arm, I was still in pain & upset that the hospital would not even give me a Tylenol, even in the condition I was in." Compl. [D.E. 1] at 11. Edwards declares: "While at the hospital, [plaintiff's] arm was stitched up. [Plaintiff] was irate that the hospital staff would not give him any pain medication." Defs.' App., Ex. 6, Edwards Decl. [D.E. 50-6] at ¶3

4

While leaving the hospital, plaintiff was acting aggressively and using racial slurs. To control plaintiff, he was taken to the ground.[7] Defs.' Stmt. Mat. Facts. [D.E. 52] at ¶¶19–20.

Plaintiff was transported back to Maury C.I., he was medically screened upon arrival, and no further injuries were noted.[8] Id. at ¶¶21–22. "Plaintiff never complained about pain to his head beyond the headaches he previously experienced." Id. at ¶23.

### Plaintiff's motion for injunctive relief:

In support of his motion for injunctive relief, plaintiff asserts he has been "experiencing epilipic [sic] symptoms," including hallucinations and involuntary spasms, "for quite some time," and symptoms have continued despite him being "off all drugs" since June 10, 2023. See Mot. [D.E. 60] at 1–2. Plaintiff asserts that Maury C.I. Unit Manager Fonville "has been part of both lawsuits [sic]" and "is a compulsively dishonest and nonprofessional official." Id. at 2. Plaintiff

---

[7] Plaintiff alleges: "Britt & Edwards walked me outside the hospital where I seen [sic] the other correctional officer (name unknown)"; "I made another racial comment, 'ignorant ass n-----' because I felt targeted & I was slammed face first into the pavement by the correctional officers, one knelt on my back, one ran to get the van & one just stood there"; "Britt & Edwards refused to let the hospital examine me again, even though I really needed to"; once in the van, Edwards and the unknown officer "start hitting [plaintiff] repeatedly back & forth in the chest & back." Compl. [D.E. 1] at 11–12. Edwards, by contrast, declares: "As we were leaving the hospital, [plaintiff] stated that he 'wasn't going back to prison' and attempted to get away from Officer Britt and [Edwards]. [Plaintiff] was refusing orders to calm down and quit jerking away. Another Correctional Officer (Officer Hawkins) was in the hospital with another offender, and heard the commotion. Officer Hawkins came out of the hospital to assist in controlling [plaintiff]. In order to gain control of [plaintiff], we placed him on a flat surface (the ground). [Plaintiff] was not slammed onto the ground face first – he was slowly guided to the ground. Officer Hawkins held [plaintiff's] upper body while Officer Britt held [his] feet. After [plaintiff] calmed down, [Edwards] went to get the van while Officers Hawkins and Britt held [plaintiff]. After retrieving the van, Officers Hawkins and Britt placed [plaintiff] in the back of the van. While doing so, [plaintiff] continued to attempt to get away. [Plaintiff] was then taken back to Maury C.I. without incident. After returning to Maury C.I., [plaintiff] was again medically evaluated." Defs.' App., Ex. 6, Edwards Decl. [D.E. 50-6] at ¶3. Edwards also declares: "During the time when we escorted [plaintiff] to the hospital and back, I did not hit, kick, or beat [plaintiff] in any way. Furthermore, none of the other officers who assisted in escorting [plaintiff] ever hit, kicked, or beat [plaintiff] in any way." Id. at ¶4. Plaintiff admits he "may have jerked [his] body from being tripped and [he] used a racial expletive towards Edwards," but "contends against opposing counsel's reasoning in that Plaintiff allegedly tried to escape multiple times [sic]." See Pl.'s Br. [D.E. 55] at 11–12.

[8] Notably, due to the events on May 1, 2020, plaintiff was cited for infractions including profane language, threatening to harm or injure staff, assault staff w/ weapon, and escape. See N.C. Dep't of Adult Corr., Offender Pub. Info., https://webapps.doc.state.nc.us/opi/viewoffenderinfractions.do?method=view&offenderID=0786337&listpage=1&li sturl=pagelistoffendersearchresults&searchOffenderId=0786337&searchDOBRange=0&obscure=Y (last visited Sept. 26, 2023).

5

contends that he did not decline any medical treatment and he has a pending Utility Review Board request for an E.E.G. and image scan. Id. at 3. Plaintiff further asserts, on July 20, 2023, Nurse Burns stated she would not order an E.E.G. unless he was "'flopping like a fish' in front of her [sic]." Id. at 4. For relief, plaintiff asks the court to order an "E.E.G. and an image scan." Id.

Plaintiff has not shown that the requested injunctive relief is related to this action. See Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (finding, "a preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). Plaintiff also fails to satisfy the stringent standards for either preliminary or permanent injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (requiring a movant seeking a permanent injunction to demonstrate "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting the Supreme Court has rejected the standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other

6

grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); see also Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

Accordingly, the court DENIES this motion [D.E. 60].

### Defendants' motion for summary judgment:

A) Arguments:

Defendants argue that they did not use excessive force against plaintiff because they were not acting maliciously or sadistically, the force used was necessary to prevent further harm and restore order, the force used was proportional to the need, plaintiff was perceived as a threat to officer safety and institutional order, and only *de minimis* force was used. Defs.' Mem. [D.E. 49] at 6–13. Defendants further argue Jackson and Edwards are entitled to summary judgment as to plaintiff's deliberate indifference claims because plaintiff failed to show a sufficiently serious injury and these defendants lacked actual knowledge of an excessive risk to plaintiff's safety. Id. at 14–15. Alternatively, defendants argue they are entitled to qualified immunity. Id. at 15–16.

As to defendants' use of force, plaintiff argues, *inter alia*: the force used was excessive; Howell did kick plaintiff in the face; defendants' declarations are contradictory as to who was present during which parts of the events; "force was not justified in any sense of act [sic]"; "plaintiff was unable to move fluidly and unable to assault himself [sic], let alone the staff"; at the hospital, although he admits he did "jerk slightly to keep from tripping over the restraints," he was slammed to the ground by Hawkins and Edwards with force that was unnecessary; Howell "admits he used a shield in plaintiff's cell, therefore admitting to an anticipated use of force [sic]"; "plaintiff was not a perceived threat to officer safety and institutional order"; at the hospital, "plaintiff could

7

not physically escape," and "those accusations were only to justify defendants' actions"; and more than *de minimis* force was used as shown by the photos. See Pl.'s Br. [D.E. 55] at 15–18. As to deliberate indifference, plaintiff argues that he had a serious medical need due to his self-inflicted arm laceration, and Jackson and Edwards "understood the necessity for help [sic]." Id. at 19.

B) Summary Judgment Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

C) Discussion:

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters,

8

989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

An Eighth Amendment excessive force claim requires a showing that "the officials act[ed] with a sufficiently culpable state of mind," and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (citation omitted). Factors for whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Defendants declare, *inter alia*, that: they used force to restrain and control plaintiff when he was resisting, making aggressive moves toward staff, and pulling away from officers; neither

9

they, nor officers they observed, hit, kicked, or beat plaintiff during these events; they placed him on flat surfaces and did not throw him to the ground; and they performed their duties as correctional officers but did not wish to harm plaintiff. See Defs.' App., Ex. 2, Carmon Decl. [D.E. 50-2] at ¶¶3–7; Ex. 3, Best Decl. [D.E. 50-3] at ¶¶3–6; id., Ex. 4, Howell Decl. [D.E. 50-4] at ¶¶3–6; id., Ex. 5, Jackson Decl. [D.E. 50-5] at ¶¶3–4; id., Ex. 6, Edwards Decl. [D.E. 50-6] at ¶¶3–5.

Plaintiff, by contrast, relies upon the allegations in his unverified complaint and his unsworn response to defendants' motion for summary judgment which are insufficient to defeat summary judgment. See Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Bennett v. Cane, No. 1:20cv56, 2022 WL 319827, at *3 (E.D. Va. Feb. 2, 2022) (unpublished).

After viewing evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendants have met their burden of showing the absence of a genuine issue of material fact as to plaintiff's excessive force claims, see Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, defendants are entitled to summary judgment on these claims. Anderson, 477 U.S. at 249; see Whitley, 475 U.S. at 322 (providing that, "[u]nless it appears that the evidence viewed in the light

10

most favorable to plaintiff will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.").

The court now turns to plaintiff's failure-to-intervene claim against Jackson. This claim, essentially, alleges a theory of "bystander liability [which] . . . permits relief against an officer who (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." Brooks, 924 F.3d at 110 (citation omitted).

Jackson declares, in relevant part: he did not observe the use-of-force incidents; he did not kick, hit, or beat plaintiff, or observe any other officers do so; and he did not intend to harm, or hold or any ill will toward, plaintiff. See Defs.' App., Ex. 5, Jackson Decl. [D.E. 50-5] at ¶¶3–4.

Plaintiff, by contrast, again merely relies upon the allegations in his unverified complaint and his unsworn response to defendants' motion for summary judgment which, as noted above, are insufficient to defeat summary judgment. See Wai Man Tom, 980 F.3d at 1037.

After viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, Jackson has met his burden of showing the absence of a genuine issue of material fact as to plaintiff's "bystander liability" claim against him, Celotex, 477 U.S. at 325, whereas plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, Jackson is entitled to summary judgment on this claim. See Anderson, 477 U.S. at 249.

The court now turns to plaintiff's deliberate indifference claims against Jackson and Edwards. To establish deliberate indifference to his serious medical needs, see Estelle v. Gamble, 429 U.S. 97, 104 (1976), plaintiff must show these defendants knew of and disregarded an objectively serious condition, known medical need, or substantial risk of serious harm, see

11

Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Also, for a delay in medical treatment to violate a prisoner's Eighth Amendment rights, the delay must "result[] in some substantial harm to the patient." Webb v. Hamidullah, 281 F. App'x 159, 166 & n.13 (4th Cir. 2008) (per curiam) (unpublished) (collecting cases).

As noted above, Jackson declares that: he did not observe the use-of-force incidents; he did not kick, hit, or beat plaintiff, or observe other officers do so; and he did not intend to harm plaintiff hold or any ill will toward him. See Defs.' App., Ex. 5, Jackson Decl. [D.E. 50-5] at ¶¶3–4.

Edwards declares: when plaintiff refused "orders to calm down and quit jerking away" at the hospital, Edwards and other officers "placed [him] on a flat surface (the ground)," but plaintiff "was not slammed on the ground face first"; plaintiff was placed in the van by other officers; and plaintiff "was taken back to Maury C.I. without incident; plaintiff was medically evaluated on his return to Maury C.I.; Edwards "never kicked, hit, or beat" plaintiff, and the other escorting officers also did not hit, kick, or beat plaintiff; plaintiff "is just another inmate" to Edwards; Edwards did not then, and does not now, "hold any feelings of ill-will toward" plaintiff; and Edwards has "never wanted to harm" plaintiff. See id., Ex. 6, Edwards Decl. [D.E. 50-6] at ¶¶3–5.

The record reflects that plaintiff received medical attention shortly after both his self-harm and the use-of-force events. See Defs.' App., Ex. C, [D.E. 50-1] at 37 (May 1, 2020, 10:01 p.m. administrative note stating: "Offender was brought to treatment by multiple custody officers escorted by the unit SGT due to self-injurious behavior. Upon arrival to the treatment room the offender was extremely hostile and combative. Offender escorted to main medical immediately by OIC for further evaluation."); id. at 33–34 (May 1, 2020, 10:46 p.m. clinical encounter ordering plaintiff's transport to UNC Lenoir Hospital for sutures for a self-inflicted laceration, with the

12

following subjective statement: "Inmate was brought to Main Medical after he was removed from his cell by force. Prior to being removed from his cell, he made a full thickness laceration to his right arm, beginning at his right wrist and extending up almost to his elbow. The subsequent Use of Force cause [sic] a small, partial thickness laceration above his right eye. He presents to Main Medical screaming at both medical and custody staff alike."); id. at 32 (May 1, 2020, 10:47 p.m. administrative note stating: "A Use of Force was used in order to extract the inmate from his cell in order to provide medical treatment for a self-inflicted laceration to his right arm. A complete assessment and treatment plan developed in prior encounter."); id. at 28 (May 2, 2020, 12:38 a.m. clinical encounter upon plaintiff's return from Lenoir Hospital, noting, in relevant part: another use-of-force incident occurred when plaintiff "began cursing/swearing at staff"; after being called a "damned druggie," plaintiff said "he had no option but to 'strike back'"; and the ER physician was able to place 14 sutures in plaintiff's right arm but, "due to the inmate's behavior, he did not close the wound on his forehead over his right eye" which "continued to ooze blood as he re-entered Main Medical at Maury C.I." Daryl Rogers, RN, cleaned the 1 inch wound over the right eye with saline and placed "steri strips," and noted plaintiff's repeated statements, "Don't you touch me! You're a n----- lover. You gonna die with the rest of the n-----s."); id. at 27 (May 2, 2020, 1:01 a.m. administrative note referencing medical return trip and the use-of-force event that occurred at Lenoir Hospital and clearing plaintiff to return to restrictive housing on [Self-Injurious Behavior] Level 1 precautions); id. at 25 (May 2, 2020, 1:17 a.m. clinical encounter with subjective assessment "I am good," noting: "Inmate was observed in his cell wrapped in green safety blanket, continue to yell to his fellow inmates. No complaint voiced"; the self-inflicted laceration was sutured at the hospital and was well approximated; and that plaintiff was advised to keep this

13

wound clean and dry); see also Pl.'s Br. Attach., Ex. 1-B, [D.E. 55-2] at 21–22 (May 1, 2020, UNC Lenoir Healthcare Emergency Physician Record noting, as chief complaint, a 7-inch self-inflicted laceration to the right forearm, plaintiff's statement that guards "roughed him up," and observing an abrasion on the right forehead with swelling to his right eye and associated bruising).

Plaintiff fails to demonstrate a genuine issue of material fact as to whether Jackson and Edwards were deliberately indifferent to his serious medical needs, or whether any delay in his medical treatment exacerbated his injuries. See Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment). Additionally, because they are not alleged to be medical providers, Jackson and Edwards generally are entitled to rely on provider expertise with respect to plaintiff's medical treatment. See Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (quotation omitted)); see also Lewis v. Hoke Cnty., No. 1:17CV987, 2020 WL 5213929, at *7 (M.D.N.C. Sept. 1, 2020) ("[P]rison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals." (citation and internal quotation marks omitted)), report and recommendation adopted, No. 1:17CV987, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022), aff'd, No. 22-6171, 2022 WL 1641282 (4th Cir. May 24, 2022) (per curiam) (unpublished).

After considering the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendants have shown the absence of a genuine issue of material fact as to plaintiff's deliberate indifference claims, Celotex, 477 U.S. at 325,

14

whereas plaintiff again merely relies upon the allegations in his unverified complaint and his unsworn response to defendants' motion for summary judgment, Wai Man Tom, 980 F.3d at 1037, and otherwise fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Thus, Jackson and Edwards are entitled to summary judgment on these claims. See Anderson, 477 U.S. at 249.

Although plaintiff now argues that defendants violated policy by failing either to call a code when entering his cell or to take required photos after each use-of-force event, see Pl.'s Br. [D.E. 55] at 6–7, 12–13, he did not allege policy violations in his pleadings, and he may not amend his complaint through argument in opposition to defendants' motion for summary judgment, see Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished) (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)). Further, even if defendants' actions did violate policy, the court has concluded that plaintiff failed to demonstrate that defendants violated his constitutional rights, and "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation." Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished); see also Joyner v. Patterson, No. CA 0:13-2675-DCN-PJG, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Violations of prison policies alone do not rise to the level of a constitutional deprivation." (citation omitted)), report and recommendation adopted, No. 0:13-CV-2675-DCN, 2014 WL 3909531 (D.S.C. Aug. 11, 2014), aff'd, 597 F. App'x 748 (4th Cir. 2015) (per curiam) (unpublished).

Alternatively, as government officials, defendants are entitled to qualified immunity from civil damages if their "conduct does not violate clearly established statutory or constitutional rights

15

of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a defendant is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

On the present record, reasonable officers in defendants' positions would not have recognized that their uses of force in response to plaintiff's aggressive actions, non-intervention in other officers' uses of force, or actions in response to plaintiff's medical needs violated any of plaintiff's constitutional rights. See id. at 743 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); see also Malley v. Briggs, 475 U.S. 335, 341 (1986). Thus, defendants likewise are entitled to a finding of qualified immunity.

### Conclusion:

For the reasons discussed above, the court: DENIES plaintiff's motion for injunctive relief [D.E. 60]; GRANTS defendants' motion for summary judgment [D.E. 48]; and DIRECTS the clerk to close the case.

SO ORDERED this 27th day of September, 2023.

Richard E Myers II
RICHARD E. MYERS II
Chief United States District Judge

16